[Cite as *In re D.M.*, 2018-Ohio-4579.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| IN THE MATTER OF: D.M. | : | | JUDGES: |
| C.B. | : | | Hon. W. Scott Gwin, P.J. |
| P.B. | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Earle E. Wise, Jr., J. |
| | : | | |
| | : | | |
| | : | | Case Nos. 18 CA 15 |
| | : | | 18 CA 16 |
| | : | | 18 CA 17 |
| | : | | |
| | : | | O P I N I O N |
| | : | | |

.

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 16JC00412, 16JC00502, 16JC00412 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | November 9, 2018 |

APPEARANCES:

For Plaintiff-Appellant

MARK PERLAKY
232 W. 3rd Street 323
Dover, OH 44622

For Appellant Ronald Blackstone

JEANETTE MOLL
P. O. Box 461
ZANESVILLE, OH 43701

For Defendant-Appellee

MELISSA M. WILSON
Guernsey County Children Services
274 Highland Avenue
Cambridge, OH 43725

*Wise, Earle, J.*

{¶ 1}   Appellant-Mother L.M appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her sons, D.M, P.B and C.B, to Appellee Guernsey County Children's Services (GCCS).

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant is the mother of D.M, born February 15, 2014, P.B, born November 28, 2015, and C.B, born October 23, 2016. D.M's father is unknown. R.B is the father of P.B and C.B.

{¶ 3}   On August 30, 2016, a complaint filed by GCCS alleged D.M and P.B were neglected, abused and dependent. Concerns included father's alcohol abuse and unexplained injuries to D.M. Ex parte custody was granted to GCCS on the same date.

{¶ 4}   At an adjudicatory hearing held on November 7, 2016, parents stipulated to the children being dependent pursuant to R.C. 2151.04(B) and (C), and the trial court found them dependent. The children remained in the temporary custody of GCCS. C.B was born shortly before the adjudicatory hearing and immediately placed in GCCS temporary custody. C.B's case was consolidated with that of D.M and C.B. All three boys were placed in a foster home in December 2016 where they remained for the duration of this matter.

{¶ 5}   A dispositional hearing was held on November 21, 2016. The previous order of temporary custody was continued and the parents were ordered to comply with the GCCS case plan adopted by the court. Appellant was to complete a mental health assessment and follow all recommendations, comply with Help Me Grow and Early Head Start for D.M and P.B, not to use physical discipline with either child and learn effective

alternatives, assist the agency in establishing paternity of D.M, maintain sobriety, and to ensure she had the ability to provide for the basic needs of the children - food, clothing, shelter, medical, and educational.

{¶ 6}   There were concerns for appellant's mental health and individual therapy was recommended. Her attendance, however, was sporadic and she was discharged for missing appointments.

{¶ 7}   Appellant and R.B fared well for approximately six months. This led to progressive visits in January 2017. However, due to housing concerns involving insects in the house, visits were moved back to the agency until appellant and R.B could secure new housing. They secured that housing in May 2017, and progressive visits began again, but quickly deteriorated. R.B was overwhelmed by the stress of having all three children in the house and stated to workers that he did not know how he was going to manage work, cooking and cleaning and taking care of the children. In June, 2017, both appellant and R.B relapsed and began drinking again. In October, R.B tested positive for methamphetamine and THC.

{¶ 8}   During one hour visits with the children, mother was observed to become overwhelmed when attempting to care for more than one child at a time. She appeared to need R.B to manage all three children.

{¶ 9}   On September 8, 2017, GCCS filed a motion for permanent custody of the children. At an annual review hearing held September 18, 2017, the trial court granted a 6-month extension of temporary custody. But on January 10, 2018, GCCS filed a motion to dismiss the motion for permanent custody so that kinship placement options raised by

appellant could be explored. When none of the proposed options were found to be appropriate, GCCS again filed a motion for permanent custody on February 26, 2018.

{¶ 10} Following another six-month extension of temporary custody granted to GCCS, a permanent custody hearing was held on June 12, 2018. As of the day of the hearing, D.M and P.B had been in the temporary custody of GCCS continuously since August 29, 2016. C.B had been in the continuous custody of GCCS since October 25, 2016.

{¶ 11} During the hearing GCCS called five witnesses – two case workers, the CASA/GAL, a parent educator from Tri County Early Head Start, a clinical chemical dependency and mental health counselor from Cedar Ridge Behavioral Health Solutions who worked with appellant and father, and one of the children's foster parents. Although appellant filed a motion for legal custody, she did not testify or call witnesses. R.B testified on his own behalf.

{¶ 12} On June 18, 2018, the trial court issued findings of fact and conclusions of law finding that GCCS had made reasonable efforts to prevent removal of the children and make it possible for them to return home to either appellant or father. However, due to the parents' inability to make significant progress in their case plans or to make parental commitment to the children, the court found it in the best interests of the children to terminate the parental rights of appellant, R.B, and the unknown father of D.M, and place the children in the permanent custody of GCCS. Appellant's motion for legal custody was denied due to her failure to prosecute the same.

{¶ 13} Appellant subsequently filed an appeal and the matter is now before this court for consideration. She raises one assignment of error as follows:

I

{¶ 14} "THE TRIAL COURT ABUSED ITS DISCRETION IN WARDING (SIC) PERMANENT CUSTODY TO GCCS AS GCCS FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

{¶ 15} In her sole assignment of error, appellant argues the trial court abused its discretion in granting permanent custody to GCCS because GCCS failed to prove that the children could not be placed with appellant within a reasonable period of time, or that the grant of permanent custody was within the best interests of the children. We disagree.

**Permanent Custody**

{¶ 16} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 215.414, that it is in the best interest of the child and any of the following apply:

(a) The child is not abandoned or orphaned* * *and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 17} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 18} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents pursuant to R.C. 2151.414(B)(1)(a), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E) including in relevant part:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the

agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

**Best Interests**

{¶ 19} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 20} First, appellant argues because she substantially complied with her case plan services, the trial court erred in granting permanent custody to GCCS. But even if she had substantially complied, this court has previously recognized, "that even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement." *Matter of L.D.* 5th Dist. Licking No. 18 CA 0023, 2018-Ohio-3380 ¶ 34, citing *In re Pendziwiatr/Hannah Children*, 5th Dist. Tuscarawas App. No. 2007 AP 03 0025, 2007-Ohio-3802, ¶ 27.

{¶ 21} That is the case here. GCCS has been involved with appellant and her family since 2014. The children had been in the temporary custody of GCCS for more than the requisite period of time under R.C. 2151.414(B)(1)(d). During GCCS's involvement beginning in 2014, there have been 35 incident reports involving the children and not much has improved. In an attempt to prevent removal of the children from their home, GCCS assisted appellant in numerous ways including referrals to service providers, an exploration into possible kinship placement, progressive visits, and financial assistance for things such as rental deposits, gas, car seats, food diapers, and strollers.

(T) 54-56. Despite these efforts, taken over the course of more than two years, appellant has been unable to get to a point where reunification with her children can take place.

{¶ 22} Although appellant appears to need R.B to assist in parenting the children, she and R.B have a tumultuous relationship riddled with violence. Appellant further appeared unable to cope with the stress of caring for all three children at once during the one-hour visits that took place during the pendency of this matter, making it questionable to find she would be capable of parenting full time on her own. Appellant struggles to divide her attention between the three children, thus being unable to provide proper supervision in order to keep the children safe from harming themselves. Appellant has also been unable to keep the children safe from R.B who has allegedly harmed D.M in the past. D.M is in fact terrified of R.B. Transcript (T), 23, 48-50, 132-135,178.

{¶ 23} Progressive visits were started several times, but then suspended due to housing concerns involving insects in the home, as well as substance abuse and domestic violence issues. There are also concerns regarding appellant's mental health. She failed, however, to consistently engage in treatment as per her case plan and was terminated from treatment. Appellant was further either unable or unwilling to obtain and maintain employment. During the course of this case, appellant changed jobs eleven times. (T) 18-20, 23-24, 30-35.

{¶ 24} Meanwhile, D.M and P.B have been in the same foster home since September 29, 2016. C.B went to the same foster home right after he was born. All three children have either behavior issues or other special needs which require a great deal of supervision and active parenting. The needs of all three are being appropriately

addressed in their foster home. Further, they have been in foster care so long that they have become bonded and integrated into the home. (T) 118-125, 127-129.

{¶ 25} Based on the foregoing, we reject appellant's arguments. GCCS presented ample evidence to demonstrate by clear and convincing evidence that the children cannot and should not be placed with appellant, and further that it was within the best interest of the children to grant the agency permanent custody.  The trial court's finding of the same, therefore, was not against the manifest weight of the evidence.

{¶ 26} Appellant's assignment of error is overruled.

{¶ 27} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.


By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.




EEW/rw